ORIGINAL

CONFIDENTIAL

FILED
APR 26 1999
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED UNDER SEAL**

| | |
|---|---|
| MUSTAFA M. ZEIN<br>c/o Robert W. Thabit<br>172 - 82nd Street<br>Brooklyn, New York 11209<br><br>Plaintiff,<br><br>-v-<br><br>UNITED STATES OF AMERICA<br>c/o United States Department of Justice<br>10th and Pennsylvania Ave. N.W.<br>Washington, D.C. 20530<br><br>Defendant. | 99-244 C<br><br>Civil Action NO. |

**COMPLAINT**

(For Breach of Contract)

1. This is a Complaint arising out of actions of the United States in the late-1980s in which it breached an oral contract with Plaintiff and thereby caused him unjustly to suffer damages.

**Parties**

2. Plaintiff, Mustafa Zein ("Zein"), is a 57-year old man born in Lebanon. He currently resides in New York and has permanent resident status in the United States.

3. Defendant is the United States of America ("United States"), which is liable, as explained below, for the actions of the executive branch of its government.

**Jurisdiction**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491, as this is an action for breach of contract and damages seeking an award from the United States in excess of ten thousand dollars ($10,000.00).

**General Personal Background**

5. Mustafa Zein was born in Tyre, Lebanon in 1942. In 1959, he came to the United States to spend his senior year in high school in Naperville, Illinois. Subsequently, he attended North Central College in Naperville. He later attended medical school at the University of Cairo in Egypt.

6. From 1968 to 1970, Zein served in the palace of Sheikh Zayed Bib Sultan, the then-ruler of Abu Dhabi and President of the United Arab Emirates. Zein's duties were akin to that of a Minister of Information to the Sheikh. In that and other positions, Zein became well known to various leaders in the Middle East and was instrumental during that period, and later, in undertaking various efforts to advance the cause of peace in that region.

7. Beginning in the 1970s, Zein became a private consultant and businessman in the Middle East and advised several national governments and multinational corporations on a variety of Middle East issues. Among Zein's private clients

were City Service Oil, Suma Corporation, Canadian Pacific, Solomon Brothers, Allied Hospitals (London/U.K.), United States Steel, Kaiser Corporation, and Northrop Corporation. Zein also served as a special consultant to the consortium of major United States corporations and companies which was established in 1983 as a result of President Reagan's initiative to rebuild Lebanon.

8. As a consultant, Zein did very well financially. As a proximate result of the actions of the United States, however, in particular the United States' contract breach, Zein is now essentially penniless.

9. In part due to his work as a consultant, Zein became a close personal friend of Robert Ames ("Ames"), an American official with the United States Embassy in Beirut, Lebanon. Ames died tragically during the April 1983 bombing of the U.S. Embassy.

10. As a result of his association with Ames and his many contacts in the Middle East, Zein was approached in 1985 by representatives of the United States who asked Zein to assist in obtaining the release of several American hostages then being held against their will at an undisclosed location in Lebanon. Zein agreed to help and devised a plan to obtain the release of the hostages. This plan involved the payment by the United States of millions of dollars. The plan was forwarded to officials in Washington and ultimately was approved and "guaranteed" by the Reagan White House.

11. At the specific request of the U.S. Government, Zein was asked to contact a very radical Palestinian Organization who had very close relations with the hostage holders in Beirut and the State of Kuwait, who was then holding seventeen prisoners at the time, in order to arrange an exchange of prisoners for hostages. The hostage holders in Lebanon had one and only one demand, "Release of the prisoners in Kuwait in order for the American hostages to be released."

12. The radical Palestinian Organization was trying to collect a debt at that time from a Middle Eastern Ambassador in London. The debt represented the taxes collected from Palestinians' working in one of the Arab Emirates which were kept in the personal account of the Ambassador.

13. The Palestinian organization was prepared to take direct violent action against the Ambassador but Zein convinced them otherwise and offered them compensation for not taking violent action against the Ambassador, by mediating the exchange of the hostages for the prisoners, which they had been willing to do for free anyway. The plan to exchange the American hostages with the prisoners in Kuwait included the payment of compensation approved by the U.S. Government, who specifically asked Zein to guarantee it to the Palestinian Organization. Zein had, many times earlier, acted as the mediator in releasing American hostages, that saved American lives without costing the American Government one penny.

14. In light of, and relying specifically upon, both the guarantee of Zein's hostages for prisoners exchange plan and its contract with him to undertake these actions, Zein set into motion certain events that led to the release, as a first step, of the hostage Rev. Benjamin Weir in Beirut.

15. Notwithstanding the White House's guarantee and Zein's action in reliance thereon, the White House abruptly changed its mind during the middle of Zein's operation and reneged on its deal after performance by Zein had begun, thereby breaching its contract with Zein. It became clear much later that the White House had decided instead to pursue the illegal and now-infamous Iran-Contra arms for hostages deal.

16. As a result of the White House's breach of its contract with Zein, the lives of Zein and his family members were threatened. Zein was told by the Radical Palestinian Organization which was mediating with the hostage holders among other things, that "his life was theirs" and that he was personally liable for the millions of dollars they considered owed to them by the United States Government. Zein was told by an official of the United States that "he was on his own."

17. As a direct and proximate result of the United States' breach of contract, Zein was faced with the "Hobson's Choice" of paying the Radical Palestinian Organization which the U.S. Government specifically asked Zein to contact and ask for help out of his personal assets the money that had been "guaranteed" by the United States, or having himself and his

family be subjected to physical threats and possibly death.

18. As a result of the foregoing actions, Zein believed he had no choice but to acquiesce to the demands submitted by the Radical Palestinian Organization which fulfilled part of the plan to release the American hostages which had been approved in its entirety by the U.S. Government who asked Zein's guarantee to be given on its behalf to the Palestinian Organization. The full details of the above are set forth in the attached enclosure, taken from the sealed court records which was fully confirmed by the Central Intelligence Agency to the Court.

19. As a result, Zein was incarcerated in the Metropolitan Correctional Center ("MCC") in New York for approximately two and a half years while issues concerning his activities and his possible extradition to the United Kingdom were discussed between the two governments. All records pertaining to these events, and relevant background support for Zein's claim herein, are under seal in the United States District Court for the Southern District of New York or are in the exclusive possession of the United States Government.

20. Once the United Kingdom determined in mid-1988 that they no longer desired the extradition of Zein, he was eventually released from the MCC. Zein has attempted to obtain records concerning him and the foregoing events released from the seal and/or released directly by agencies of the United States, both in an effort to aid him in pursuing this case and

in clearing his name. His inability to obtain these crucial documents has tolled any statute of limitations from running on his breach of contract claim.

21. Zein has attempted to obtain relief from the United States short of filing this action, but has been unsuccessful.

**COUNT I**

(Breach of Contract)

22. Plaintiff reincorporates and realleges the allegations in paragraphs 1 through 21 as if fully set forth herein.

23. The actions of the United States and its "guarantee" described above created a contract with Zein. This "guarantee" caused Zein to take certain actions and make certain financial and other promises on behalf of and at the request of the United States Government.

24. After Zein began performance and set into motion the plan and "guarantee" that the United States had specifically approved, the United States reneged on and breached its contract with Zein.

25. As a direct and proximate result of the breach, Zein was forced to complete the contract as demanded by the Radical Palestinian Organization who was helping to release the hostages. He was forced to do so because his life and the lives of his family were placed in peril, by the United States' breach. As a further direct and proximate result of the breach, Zein lost his good name, reputation, and ability to

make a living as an international consultant. In addition, Zein has been seriously stigmatized by the actions of the United States and the events that stemmed therefrom, including his lengthy incarceration and the negative publicity resulting therefrom.

26. As a direct and proximate result of Defendant's illegal actions, Plaintiff's contractual rights have been impaired and Plaintiff has suffered and continues to suffer daily damages, including actual funds expended and costs incurred to date, and lost income in an amount as yet undetermined in excess of seventy five million dollars ($75,000,000.00), plus interest.

**WHEREFORE,** Plaintiff Zein prays:

1. That this Court declare the United States Government to have breached its contract with Zein and to be responsible for Plaintiff Zein's inability to complete the deal he had negotiated, at the specific request of the united States, to secure the release of hostages held in Lebanon;

2. That this Court declare Defendant, the United States Government, responsible for the severe economic and other damages suffered by Plaintiff Zein;

3. That this Court enter a judgment for compensatory damages in the amount as yet undetermined in excess of seventy five million dollars ($75,000,000.00), plus interest; and

4. That this Court enter such other and further relief as it deems just and proper, including his attorney's fees and costs.

Respectfully submitted,

Mustafa M. Zein

New York, New York
April 26, 1999

**United States Court of Federal Claims**

# Memorandum

TO: JUDGE Allegra

FROM: CLERK'S OFFICE

✓ The attached pro se complaint is for screening pursuant to Internal Procedure B-8.

______ The attached pro se complaint was received on __________ under cover of an application to proceed in forma pauperis.

FOR RETURN SEE REVERSE SIDE