ORIGINAL

UNDER SEAL

FILED FEB 17 2000 U.S. COURT OF FEDERAL CLAIMS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x

In re: Extradition of
MUSTAFA ZEIN

86 Cr. Misc 1, page 46

---------------------------------------------x

New York, N. Y.
February 11, 1988
5:15 p.m.

Before:

HON. JOHN E. SPRIZZO,

District Judge

APPEARANCES:

RUDOLPH W. GIULIANI, Esq.
United States Attorney for the
Southern District of New York
HERVE GOURAIGE, Esq.
Assistant United States Attorney

A. J. VIVIANI, Esq.
HARRY C. BATCHELDER
Attorneys for defendant Mustafa Zein

S E A L E D

wc



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

In re: Extradition of
MUSTAFA ZEIN

86 Cr. Misc 1, page 46

-----------------------------------x

New York, N. Y.
February 11, 1988
5:15 p.m.

Before:

HON. JOHN E. SPRIZZO,

District Judge

APPEARANCES:

RUDOLPH W. GIULIANI, Esq.
United States Attorney for the
Southern District of New York
HERVE GOURAIGE, Esq.
Assistant United States Attorney

A. J. VIVIANI, Esq.
HARRY C. BATCHELDER
Attorneys for defendant Mustafa Zein

S E A L E D

THE COURT: In re Zein. If there is going to be a plea, I take it that it has to be in open court.

MR. VIVIANI: I guess we could waive that, your Honor.

THE COURT: The Second Circuit says I can't waive it.

MR. COURAIGE: I am sorry, what?

THE COURT: The Second Circuit says I can't waive it.

MR. VIVIANI: Except certain portions of it could be done in the robing room.

THE COURT: Why don't you tell me what the legal status of the case is first?

MR. BATCHELDER: Maybe we ought to approach on that one.

(At the bench)

THE COURT: The plea itself has to be on the record.

MR. VIVIANI: I understand that.

THE COURT: And the waiver has to be in open court.

MR. COURAIGE: Right.

THE COURT: The British Government has not resisted being assigned to me?

MR. BATCHELDER: Indeed, your Honor, they have

with the greatest of alacrity, your Honor, withdrawn their grave concern that they had.

THE COURT: I thought they hated me in England.

MR. GOURAIGE: They thought they'd give you another chance, Judge.

THE COURT: In any event, if there are things you want to put on the record in connection with the arrangements you have made, I can do that after I take the plea. If he has decided to waive and plead, then I can take his plea now.

MR. VIVIANI: What we can do, Judge, there are just a few things and I can put them on the record in a minute in a very general way.

THE COURT: Why don't we just get his waiver of indictment on the record, I will allocute him on the plea, and then I will ask him whether or not any arrangements have been made or representations have been made in connection with his plea, and you can tell me that there have been which you would like to put on the record in camera.

MR. VIVIANI: Judge, could we have just a conference in the robing room?

THE COURT: All right.

(In the robing room)

THE COURT: Who wants to speak first?

MR. VIVIANI: Let me just put on the record, your Honor, if I may, before we have the voir dire, what I believe to be the understanding reached among the United States, the defendant, and Great Britain.

It is my understanding that by entering a plea of guilty to the information which charges a violation of 18 U.S.C. 875(a) --

THE COURT: Which is what?

MR. VIVIANI: -- making a phone call in interstate or foreign commerce, in which a ransom demand is made, the government of Great Britain will drop its extradition of the defendant on the charges leveled therein, and they further agree that should the defendant leave, either voluntarily or involuntarily, the United States, he will not be extradited by Great Britain from any country to which he goes.

In addition, it is my understanding, and the government agrees, that there will be, however the Court prefers it, either a hearing, or a narrative under oath, or not under oath, however the Court may want it, with Mr. Couraige having the right to examine, should he desire, the defendant on his coercion defense, which he will necessarily waive but which we ask the Court --

THE COURT: To consider on sentencing.

MR. VIVIANI: -- to consider in mitigation of

punishment.

THE COURT: In effect it is a modified Fatico hearing.

MR. COURAIGE: Yes, sir.

THE COURT: I am willing to do that. I take it both sides agree to be bound by whatever findings I make on that issue.

MR. GOURAIGE: Your Honor, we are not prepared to have a hearing. I don't want to examine Mr. Zein. He will state whatever facts he wants to state to your Honor that he contends amount to a duress defense. The government's position is that the facts that he has told us do not amount to a duress offense under American law.

THE COURT: Which is why he is pleading guilty. They may not amount to a defense but there may be mitigating factors on sentencing.

MR. GOURAIGE: That's correct.

THE COURT: I did this in another case of a defendant from upstate, Pisani, where there were disputed issues about his participation and nonparticipation with respect to certain transactions he was unwilling to plead to. He pleaded to some other charges, and the government and defense counsel agreed that I would be able to make that determination and they would both live by whatever I chose to accept. That is what I did then.

I see no reason why I can't do that here. The government can give me their version of what they think happened, and you can give me your version of what you think happened. If you want a hearing, I will have one. If you don't want a hearing, I will just resolve it on the basis of what you tell me and then make my own decision as to what extent, if any, that impacts the sentencing. If you want to leave that in my hands, that's all right with me.

MR. VIVIANI: Yes, your Honor, I have no problem with that, but I will obviously argue whether or not a coercion defense is made.

THE COURT: Once he pleads guilty, that is waived.

MR. VIVIANI: I understand that, your Honor. But all I am suggesting is that whether or not it in fact meets foursquare with what the Second Circuit says is a coercion defense, I would still take the position that you have the power to appreciate and to take that in mitigation even if he does not.

THE COURT: It is no different in a criminal contempt situation, where someone is charged with not testifying before a grand jury and his argument is, "I was afraid they were going to beat up my children," etc., and of course the Second Circuit has said, unless it is death

or bodily harm directed to you personally, it doesn't rise to the level of coercion, although the Court can always consider it in mitigation.

MR. VIVIANI: Thank you. That is what I wanted to make clear.

THE COURT: I was going to suggest maybe we should take the entire plea in here and I can unseal those portions of it or you can agree upon what portions should be unsealed and they will just unseal those portions that relate to the allocution and leave everything else sealed. All right?

MR. VIVIANI: Fine, your Honor. The other item I wanted to raise is, it was my understanding originally that the CIA would provide a verbal presentation to your Honor, but I am now told that it will be a written presentation which I can read but not copy. Is that accurate?

MR. COURAIGE: Your Honor, if it is OK with the Court, what the CIA would like to do is to submit a written statement regarding what Mr. Zein has done for them, for the United States Government.

THE COURT: As long as they know what they are saying so they have a fair opportunity to dispute it.

MR. COURAIGE: We will give them a copy of that to read a few days before sentencing. We will also submit

it to the Court. We would simply ask that the Court seal it and direct that it be held in the custody of the U.S. Attorney's Office and not filed in the Clerk's Office.

THE COURT: As long as the defense counsel has access to it, then I have no problem.

MR. VIVIANI: There are two other issues. I simply want Mr. Couraige to confirm that the government will not make any recommendation as to a specific sentence other than what they usually put in their presentence report, which is describing the crime and their view of what the crime is and that sort of thing in a very general way.

THE COURT: They never do make recommendations on sentencing, except that once in a while Giuliani has asked for a maximum sentence, although I don't expect the government will do that here.

MR. COURAIGE: I don't expect we will do that.

MR. VIVIANI: The reason I suggest that is that I know the British do not really care, which is one of the documents we will be able to give you.

The final issue is: How do we handle the presentence report, your Honor? I would not want my client telling them the background of this case, because it will go into the report.

THE COURT: We don't have to have a presentence

report if the information that would otherwise be presented to me is presented to me by the parties. Presentence investigations are designed for the benefit of the Court. If this is the kind of case in which people don't necessarily want a probation officer ferreting out all these problems, I can very well do it. As long as you agree that whatever relevant information you want to provide me on sentencing can be provided to me either by counsel or the government, then I don't see any reason to have a presentence report.

MR. GOURAIGE: I think Mr. Zein can waive a presentence report.

THE COURT: I can waive it even if he doesn't want to waive it. Certainly you can waive it with his consent.

MR. VIVIANI: Assuming the worst, Judge, you know it follows him wherever he goes, and if it just contained, for example, background information, date of birth, all of that --

THE COURT: Even background information might be a problem for him, in the sense that they always have information on siblings and uncles and fathers and whatnot.

MR. VIVIANI: We would have no problem, then, Judge, in waiving a presentence report. Obviously, we are going to provide the Court with a sentencing memo and put

everything in it.

THE COURT: As long as both sides have the opportunity to contest or dispute whatever the other side tells me, I have no problem with it. I don't think anybody cares where he was born or who his sisters are. The big question here is whether or not he should be getting some consideration because of the circumstances of this particular offense. Has he been convicted of a crime in the past?

MR. VIVIANI: No, your Honor.

MR. GOURAIGE: No.

THE COURT: So the government is in a position to tell me whatever I need to know about his background, and you are in a position to tell me whatever I think I need to know about mitigation. I think a presentence report for the reasons you raised is a problem because it will go with him to the institution.

MR. VIVIANI: We are prepared, Judge, to waive it.

THE COURT: I take it everyone agrees with it and I will waive a presentence report.

Is that your agreement, Mr. Zein?

THE DEFENDANT: Yes.

MR. VIVIANI: I have just one last thing. It is not a commitment with the government but it is something

the defendant wants. He has been in the MCC for two years and one month. It is not a bail application. What it basically is is that he recognizes that he has an opportunity to speak to the Court before sentencing, and what he would like to do is to, rather than on the day of sentencing meet with the attorneys and the Court for at least a half hour so that your Honor would relive what he went through on this particular event in London.

THE COURT: He can do that in lieu of his allocution if he wants to. He may not want to make any statement in open court about this case.

MR. VIVIANI: What I am suggesting is that if we could meet a few days before the sentencing and have him speak to you.

THE COURT: I don't want to hear it twice is what I am saying.

MR. VIVIANI: If he can do it that one time, that is enough.

THE COURT: He has a right to allocute. All I am saying is that I will hear his allocution before his sentence or on the day of sentencing. I just don't want to hear it twice.

THE DEFENDANT: No, your Honor -- can I speak?

THE COURT: Yes.

THE DEFENDANT: What I really would like is an

opportunity -- I know before sentencing I have the right to say something -- but I would like you to consider before the sentence what I have to say with the evidence that is going to be introduced to you, your Honor, so your decision would take into consideration what I have to say.

THE COURT: Maybe the logical thing to do is, once I accept his plea, at the end of the proceedings today I will fix what amounts to a date for another hearing. Presumably by the time we have that hearing I will have whatever information the government wants to give me, whatever information the defendants want to give me. If he wants to tell me something, he can. If either of you wants to dispute any of the statements the other one has made, I will hear you. If you need to have any things resolved I will resolve them and then we can have the sentencing one week later.

MR. BATCHELDER: Your Honor, if we could have one thing. I have spoken to Mr. Couraige about this. They have tapes, of course, of conversations that were made here. I would appreciate it, if there are any tapes from Scotland yard that we don't have, could we please get them. I am going to be responsible for a substantial part of this sentencing memorandum.

THE COURT: Does the government have them?

MR. COURAICE: I don't have the tapes from

Scotland yard. What I have are transcripts.

MR. BATCHELDER: That's dynamite, that's fine.

THE COURT: Why don't I set the hearing date sufficiently in advance, like sixty days from now, to give you an opportunity to do whatever you have to do, and then I will set the sentencing date two weeks thereafter?

THE DEFENDANT: Sixty days, your Honor?

THE COURT: That is two months. Your lawyers are going to need time here to prepare a memorandum. The government is going to need time here to do whatever they have to do, too.

MR. COURAIGE: We will need at least four weeks, I understand, from the agency. They would prefer maybe five or six weeks, but at least four weeks.

MR. BATCHELDER: I would like that time, too. Once we see the thing from the agency, I think it might be helpful, if we have a little disagreement, or maybe we can fill it out by going to Washington with Mr. Couraige to talk to --

THE COURT: I will set a date. If you want to adjourn it, you can adjourn it. I am not going to rush you. This case has been around for two years.

THE DEFENDANT: Twenty-five months.

THE COURT: I am not going to start rushing it now. Let's be rational. Get me all the information. If I

have all these important decisions to make as to what kind of sentence to impose in a case like this, I would like to have the benefit of all the information I can get. I am not going to rush you into sentencing, especially since he has already been in jail for twenty-five months anyway. At this stage of the game I don't think it makes any difference.

THE DEFENDANT: I have a question, your Honor, that is, a stipulation that was supposed to be given to the British and we agreed on. Are you going to give it to them?

MR. GOURAIGE: What stipulation is that?

MR. VIVIANI: The memorandum of understanding.

THE DEFENDANT: The memorandum of understanding.

MR. GOURAIGE: I think your Honor has seen a copy of that stipulation before.

THE DEFENDANT: No, with the addition.

THE COURT: That doesn't concern me at this stage, Mr. Zein, because the understanding is -- and this is why we are having this conference now -- that your plea of guilty is being entered into upon certain representations being made to you, to wit, that the extradition proceedings will be dropped and that if you are released from prison here, at some point they will not seek to extradite you from any other country.

If it turns out that is not the case, I will let

you withdraw your plea. I have to, because that is the understanding on which you are pleading guilty. The government is not going to sandbag you. If the British Government changes their mind at some point in time, I expect I will get a copy of the final memorandum of understanding which incorporates those representations.

MR. GOURAIGE: I will make that available to the Court.

THE COURT: At this point of the game, we already have on the record now that when I put the question to you, as I will, are there any representations or arrangements in connection with your plea, and then all you are going to say is yes, the ones we put on the record already. I will ask you if there are any others, and I expect you will say no, unless there are any others.

MR. VIVIANI: There are no others.

THE DEFENDANT: There are no others.

THE COURT: Then we can proceed to the allocution.

MR. GOURAIGE: There is one other we didn't touch on, Judge, and that is the matter of Mr. Zein's immigration status in this country. He is, as I understand it, a permanent resident alien. We have not made any agreement about that, about his status.

THE COURT: About what the INS will or will not

do with him.

MR. GOURAIGE: That's correct.

MR. VIVIANI: We understand, Judge, he has a green card which he got through the efforts of the agency. Whatever the INS does, they do.

THE COURT: We don't always understand what they do, but that is not part of this plea arrangement.

MR. VIVIANI: No, it is not, your Honor. He keeps the green card, obviously, but if they want to deport him, they deport him. But that is another day and not here. And there are no guarantees on that one way or the other.

THE DEFENDANT: And I believe the understanding is, you are not raising the issue either.

MR. GOURAIGE: That's correct.

THE DEFENDANT: Exactly.

THE COURT: Mr. Zein, you have heard everything your lawyers have said and the government lawyers have said and everything I have said, and I understand you would like to waive indictment and plead guilty to an information charging you with the use of a telephone to make -- what, a threat?

MR. VIVIANI: A ransom demand.

THE COURT: A ransom demand. We have put on the record what I understand to be the representations and promises which the government has made to you, some of

which have been made on behalf of the British Government, in connection with your plea. Other than what we have referred to, are there any other arrangements which exist which I should know about?

THE DEFENDANT: No.

THE COURT: You have a right under the law in a case involving a felony to have the government present the case to a grand jury, and, as I understand it, you are willing to waive that right.

THE DEFENDANT: I did, your Honor.

THE COURT: And proceed by way of an information, which is the United States Attorney filing a charge. Do you understand that?

THE DEFENDANT: I do understand.

THE COURT: That waiver is supposed to be effected in open court. This is the public portion of the plea and this portion will be unsealed, so I think we are complying with the rules when we say this waiver is in open court, although it is being done in the robing room, because the record of the proceeding, this portion, will be open to public inspection. Have you executed that waiver? It has to be done in writing.

MR. GOURAIGE: Yes, we did.

THE COURT: I left it on the bench. Will you get it?

Was that signed by yourself, Mr. Zein, in open court?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you sign it, Mr. Viviani?

MR. VIVIANI: I did.

THE COURT: The government doesn't sign that, or do you?

MR. GOURAIGE: No, your Honor.

MR. VIVIANI: The clerk is a witness.

THE COURT: So it has been properly executed. We will mark it as Court's Exhibit 1 in connection with the plea.

(Court's Exhibit 1 was deemed marked.)

THE COURT: The second question, of course, before I can accept your plea of guilty, is that I have to satisfy myself that you understand what you are giving up.

Under the law, Mr. Zein, you have the right to a trial by jury, which means that twelve people from the community would be selected to come in and try the case of whether or not the government has proved these charges in this information beyond a reasonable doubt. You have an absolute right under the law to be silent, an absolute right against self-incrimination. You need do nothing in your own defense. You need not testify, you need not call any witnesses. You have the right to be absolutely mute,

and you are, of course, under the law presumed to be innocent, and that presumption remains with you throughout the trial, throughout the jury deliberations, until such time, if ever, as a jury is convinced that the government has carried that burden. That is a heavy burden the government has to carry. No adverse inference can be used against you for not testifying or calling any witnesses in your own defense.

If you did want to call witnesses in your own defense, you have the right to do that. You would have the right to have a lawyer represent you at trial. You would have a right to confront and cross-examine the government witnesses. These are very basic rights which you give up when you plead guilty. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: The Court has the same power to sentence you on a plea of guilty as it would have after a full trial. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: We have gone through the representations or promises that the government has made, and other than that, I take it there are no representations or promises being made to you by anyone else which have induced you to plead guilty? Has anyone threatened you in any way to plead guilty?

wc



THE DEFENDANT: No, your Honor.

THE COURT: Anyone inside or outside the government?

THE DEFENDANT: No, your Honor.

THE COURT: I understand that there are coercion defenses you have here which may or may not be sufficient under the law, and you understand that by pleading guilty you in effect are waiving your right to assert those defenses as a complete defense to the charges. But I do expect, as we have discussed, that you will argue some of those circumstances in mitigation of the punishment. Is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: So you are pleading guilty, as I understand it, because in your conversations with your lawyer at least you have been advised by your attorney that these facts may not present a legal defense, is that correct, a total defense to the charges?

MR. VIVIANI: That is not quite accurate, your Honor. We are pleading guilty in this case, recognizing the fact that the extradition to Great Britain may make it impossible for him to corroborate a coercion defense by evidence that the government has which the government refuses to provide and which we may or may not be able to obtain in a habeas action in the extradition context. The

WC



alternative from Great Britain's point of view was, we can dispose of this case here with a plea to this count.

THE COURT: I am only addressing myself to this count and my question really is: Does he understand or has he been advised by you that with respect to this charge, the one that has been filed in the United States, that the facts which he asserts may not be a complete defense to the charges under the law in this Circuit?

MR. VIVIANI: It may or it may not. It could go both ways, your Honor.

THE COURT: And he has in effect decided not to litigate the issue.

MR. VIVIANI: He has decided to only litigate the issue in the mitigation of sentencing context.

THE DEFENDANT: Yes.

THE COURT: While you may not personally believe you are guilty under the law, your lawyer has advised you that that legal position may not be sustained by the courts, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: I think that is a sufficient basis for a plea. This is sort of a hybrid Alford plea, in the sense that he has not admitted guilt nor do I think he will admit guilt to this offense, because I think in his own mind he thinks he was coerced. But, as I understand it, he

is willing to waive the extradition, to waive his right to assert or to test that question. I think that that kind of plea is permissible even though he is not, as I understand it, going to admit guilt.

You are not going to admit guilt of these charges, I take it, Mr. Zein?

MR. VIVIANI: He will acknowledge, your Honor, that he participated in the kidnapping.

THE DEFENDANT: Can I speak, please?

MR. VIVIANI: I am sorry.

THE DEFENDANT: Your Honor --

THE COURT: I take it you don't contest what you did?

THE DEFENDANT: Your Honor, I did what I did.

THE COURT: There is no issue here as to what you did.

THE DEFENDANT: No.

THE COURT: The only issue is, you do admit being part of a kidnapping situation?

THE DEFENDANT: Yes, I admit, your Honor. As a matter of fact, I accepted, and which was refused of course, that the whole issue to be stipulated and I was ready to abide by whatever decision you would have made. But the plea of guilt, in my opinion and in my belief, your Honor, is not going to make any difference, because I know you are

going to decide the case, your Honor, not because I pleaded but you are going to decide the case according to the facts available.

THE COURT: You are dealing now with what sentence I will impose.

THE DEFENDANT: I understand I am dealing with the sentence.

THE COURT: So what I am saying is, you don't dispute that you did the acts here, and I take it no one disputes that if the acts were proved, a court could find or a jury could find that they would make out an offense against the United States. I think there is no issue that you made the phone call with the ransom demand, I take it.

THE DEFENDANT: Yes, I was transmitting, but I would like to explain to you later, your Honor, what --

THE COURT: I understand. Your argument is that you did it but that there was a certain amount of coercion involved in your doing it.

THE DEFENDANT: Yes.

THE COURT: And that, from what I understand the facts to be, you have decided, for reasons of your own and as a result of very long negotiations with the government and the Government of Great Britain, to give up your right to litigate the legal significance of what you did as part of this plea arrangement, as I understand it.

wc



THE DEFENDANT: You are absolutely right, your Honor, because when you take the whole case as a whole, that involves national secrets that would be harmful to the United States, that would be harmful to my family and to others, this is the best way to dispose of the case. And I know that. I know also you are a hard judge, your Honor, and I am not taking it light. But I know, when you decide the sentence and after looking over the facts, and if you find any benefit of doubt, I know that you will give it to me.

THE COURT: I can only take it into consideration on the sentencing.

THE DEFENDANT: Exactly.

THE COURT: I cannot take it into consideration insofar as wiping out the fact of the conviction. You will have a conviction regardless of what I do on sentencing.

THE DEFENDANT: Regardless of what the sentence is.

THE COURT: That is what you have to understand. Under the law I have to satisfy myself that there is a factual basis for your plea, and that factual basis is established, at least in my mind, by your admission that you committed the offense, which is what you admit doing?

THE DEFENDANT: I did.

THE COURT: You did the acts.

THE DEFENDANT: Yes, your Honor.

THE COURT: And the only question is whether or not those acts are defendable on some grounds of coercion which you have given up your right to litigate.

THE DEFENDANT: Yes, I did give up.

THE COURT: That is where we are. I think I have an adequate basis for the plea. I don't think that it is required under the law that the defendant admit that he acted illegally or unlawfully if in his own mind he thought he was acting lawfully for reasons he has. But if the reasons he thinks his conduct is lawful are not those the law necessarily will sustain, I think he has a right under the law to enter a plea of guilty and the Court can accept his plea on that basis.

I just wanted to be clear as to the basis upon which I am accepting the plea without having him tell me, as I ordinarily would do, that he in effect committed the offense unlawfully, willfully and knowingly, knew he was doing something wrong. This is a case in which that is not so clear in his own mind. Is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: So I am accepting this plea, I guess you might say, on a modified Alford basis, and the government is not objecting to that.

MR. COURAICE: No, your Honor.

THE COURT: I have already gone through basically what you did, but of course I should have advised you before I did that that you have a right under the law not to answer any questions and to protect yourself against self-incrimination, but when you plead guilty you give up that right. I assume the answers you have given to me are truthful, because if they are not they would be the basis for a separate charge. All right?

THE DEFENDANT: Yes, sir.

THE COURT: I should have told you that before we got into that colloquy, but this has been a rather unique plea situation. We got into the allocution before we got into the warnings about false statements. But I don't think the facts in this case are in real dispute, so it doesn't make a difference.

Mr. Zein, I am not going to ask you how old you are, because it is obvious to me that you are a man of some intelligence and experience and I think you know what you are doing. These negotiations have been going on for a long time. But I do have to ask you whether or not you understand what is happening.

THE DEFENDANT: Yes sir, I understand perfectly.

THE COURT: And you discussed these matters fully with your lawyers, Mr. Batchelder and Mr. Viviani?

THE DEFENDANT: Yes, your Honor.

THE COURT: I take it you have been satisfied with the advice they have given you as to this disposition?

THE DEFENDANT: Yes, your Honor.

THE COURT: And it has been a long time coming, there has been a lot of negotiations here.

THE DEFENDANT: Yes.

THE COURT: The maximum sentence here is what, Mr. Viviani?

MR. VIVIANI: Twenty years, your Honor.

THE COURT: And what is the fine?

MR. VIVIANI: 5,000.

THE COURT: The maximum sentence --

MR. COURAIGE: The fine is 250,000, because of the alternative fine provision.

THE COURT: -- is twenty years and a maximum fine of $250,000.

MR. VIVIANI: What date are we talking about?

MR. GOURAICE: December '84.

MR. VIVIANI: I am sorry.

THE COURT: In any event, it is better I err on the side of telling him the maximum is higher rather than lower. And I have to impose, I guess, the $50 statutory assessment. That is mandatory. The twenty years or the fine up to $250,000 are in the discretion of the Court, but the fine is mandatory. I have to impose it. The $50

statutory assessment penalty is mandatory. So you understand that is not necessarily what I will do, but it is what I can do. When you plead guilty you should understand that is the maximum sentencing power the Court has.

THE DEFENDANT: Yes, your Honor.

THE COURT: Were these phone calls placed from New York or where were they placed from?

THE WITNESS: New York.

THE COURT: So venue is satisfied. Does the government know of any reason why he should not plead guilty?

MR. COURAIGE: No, your Honor.

THE COURT: You represent you have sufficient evidence to convict him beyond a reasonable doubt of this charge?

MR. COURAIGE: Yes.

THE COURT: Mr. Viviani, do you know of any reason why he should not plead guilty?

MR. VIVIANI: No, your Honor.

THE COURT: Certain questions I put during the course of the allocution may fall into the category of things you want to keep secret, at least some of his references to coercion with respect to him and his family. So whatever portions of the transcript you and the

wc



government agree upon should be sealed, you can indicate by page and chapter number, whatever they are, and I will sign an order sealing those portions of the transcript. I think I have asked all the relevant questions on the allocution. Have I left anything out?

MR. GOURAIGE: Nothing that I can think of, Judge.

MR. VIVIANI: Your Honor, I think you would want to know what the elements underlying a coercion defense in Great Britain are. The case is getting out of hand for Mr. Zein in the sense that he has the firm of Jacques & Lewis, whom he has retained over there. A fellow named Tim Maloney --

THE DEFENDANT: And Andrew Wallace.

MR. VIVIANI: -- and Andrew Wallace represent him there. And they have sent us material. I think I could talk to them on the phone, unless your Honor wants something from them.

THE COURT: I am really not so much concerned with the coercion laws in England but with the coercion laws in the United States. He is pleading guilty to an American charge, and under American law --

MR. VIVIANI: I understand, but I simply want to show you what the difference is for you to take into account, assuming he did go back and assuming he did

prevail. It is simply another factor, I think.

THE COURT: I don't need a memorandum from English lawyers, if that is what you are asking.

MR. VIVIANI: Thank you.

THE COURT: I don't think I really need that. I think I have asked all the pertinent questions. Maybe, on the better side of safety, I can make the appropriate findings and in the interests of justice and given the sensitive nature of this whole situation that the entire transcript be sealed at least until the time we have our next hearing in sixty days.

MR. BATCHELDER: I would appreciate that, your Honor.

THE COURT: I don't think any newspapers are going to make an inquiry. If they do make an inquiry, I will give them a chance to be heard on that issue.

MR. COURAIGE: Let me suggest this, Judge. It is my understanding that the government cannot ask a court to take a sealed plea unless the U.S. Attorney has obtained approval from the Assistant Attorney General.

THE COURT: The fact of the plea will not be sealed. All I intend to seal is the transcript of the allocution, which has been interspersed with a lot of information which may be highly sensitive. I think the fact of the plea can be public. If you want to go out

right now, we will put that on the record publicly.

MR. GOURAICE: I would simply suggest that you give us an opportunity, we will just review the transcript, and we will indicate to the Court which portions we think ought to be sealed.

THE COURT: We can go right outside now and I will tell Mr. Zein in open court, "Mr. Zein, we have had an allocution in camera, in which you indicated you wanted to waive your right to an indictment and plead guilty to these charges, and I take it you do plead guilty to those charges based upon everything you said in camera," and it is a public record.

THE DEFENDANT: And I would say it is no problem.

MR. GOURAICE: All right.

MR. VIVIANI: Oh, the dates, Judge.

THE COURT: I guess I didn't ask him whether he is under the influence of any drugs or any medication.

THE DEFENDANT: No, your Honor.

THE COURT: Do you take any prescription medication?

THE DEFENDANT: Yes.

THE COURT: What kind of medication do you take?

THE DEFENDANT: For inflammation of the joints.

THE COURT: Like an aspirin?

THE DEFENDANT: It is.

THE COURT: Motrin?

THE DEFENDANT: Motrin.

THE COURT: Does it doesn't affect your ability to think?

THE DEFENDANT: No, your Honor.

THE COURT: And I take it you have had no drugs or alcohol in the last twenty-four hours?

THE DEFENDANT: No, your Honor, and I don't drink.

THE COURT: If you are a good Moslem you shouldn't, but I know a lot of Moslems that do. At least they drank when they were outside their home countries; they didn't drink when they were inside their home countries.

Is your mind clear?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand what has been happening here?

THE DEFENDANT: Yes, your Honor.

THE COURT: I will find for the record that he obviously understands the proceedings, he has been party to many conferences with the Court, and the Court has had an opportunity to observe him. He is obviously a man of some intelligence and he knows exactly what is happening.

THE DEFENDANT: Absolutely.

THE COURT: This is not one of those situations in which I could possibly believe that in entering this plea you were overreached by the government. Put your plea on the record outside.

MR. VIVIANI: Do you want to get dates here or outside?

THE COURT: Why don't we fix the dates here just in case you want to keep that hearing secret. Why don't I put you down for 3 o'clock on April 22.

THE DEFENDANT: Your Honor, I have an observation. Usually when a case is delayed, they move the people to other prisons.

MR. BATCHELDER: I will ask him.

THE COURT: You want to get out of the MCC?

MR. BATCHELDER: No, he wants to stay there.

THE DEFENDANT: Stay.

THE COURT: They can't move you before sentencing.

MR. BATCHELDER: They have started to move people to Otisville.

MR. COURAIGE: I think what they will do is, they will give me a call to find out if there is a need to have the defendant here and I will tell them that they should keep him.

THE COURT: Tell them I have a hearing schedule

wc



on April 22 and I don't want him moved. I don't want to be writting you up and back. We will put his plea on the record outside.

(continued on next page)

WC



(In open court)

THE COURT: Mr. Viviani, it is my understanding that your client wishes to waive indictment, and he has executed a formal waiver of indictment after being fully advised by you and by the Court in camera as to what his rights are, and wishes to plead guilty to a one-count information charging him with use of the telephone in connection with making a ransom demand.

MR. VIVIANI: That is correct, your Honor.

THE COURT: Mr. Zein, do you wish to enter a plea of guilty to that charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: We have had your allocution in chambers. The Court has for reasons, at least for the present, ordered that that transcript be sealed. But your plea is of course a matter of public record, and will be entered accordingly.

MR. BATCHELDER: Thank you, sir.

MR. VIVIANI: Thank you, your Honor.

THE DEFENDANT: Thank you, your Honor.

THE COURT: Have a good day.

\- - -