UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

UNITED STATES OF AMERICA

v. 88 Cr. 99

MUSTAFA ZEIN,

Defendant.

-----------------------------------x

July 29, 1988
6:00 o'clock pm

Before:

HON. JOHN E. SPRIZZO,

District Judge

APPEARANCES

RUDOLPH W. GIULIANI,
United States Attorney for the
Southern District of New York,
HERVE GOURAIGE,
Assistant United States Attorney

ARTHUR J. VIVIANI and
THOMAS BELOTF,
Attorneys for defendant

jah

SEALED



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x

UNITED STATES OF AMERICA

v. 88 Cr. 99

MUSTAFA ZEIN,

Defendant.

--------------------------------x

July 29, 1988
6:00 o'clock pm

Before:

HON. JOHN E. SPRIZZO,

District Judge

APPEARANCES

RUDOLPH W. GIULIANI,
United States Attorney for the
Southern District of New York,
HERVE GOUPAIGE,
Assistant United States Attorney

ARTHUR J. VIVIANI and
THOMAS BELOTE,
Attorneys for defendant

jah



(Case called)

(In closed court)

THE COURT: Does the government object to making the recommendation that you make?

MR. VIVIANI: They do, Judge.

MR. GOURAIGE: I don't object, your Honor.

The government's position is that we take no position other than to bring to your Honor's attention a recent Second Circuit opinion that addresses the jurisdictional question.

THE COURT: Jurisdictional question?

MR. GOURAIGE: Yes, the motion has to be signed by your Honor within 30 days of sentencing.

THE COURT: I think it is within 30 days of sentencing because we have a motion to modify the sentence, which is within the last few days, is it not?

Isn't that true?

MR. GOURAIGE: I understand that is Mr. Viviani's argument. I wanted your Honor to look at that Second Circuit language and if the court deems it appropriate --

MR. VIVIANI: I can summarize the case briefly, Judge, if you would like.

THE COURT: Let me look at this case.

(Pause)

THE COURT: Well, this doesn't help me particularly because all it says is that if the court circumvents the 30-day requirement by nunc pro tunc recommendation or vacation of the sentence for the purposes of triggering the 30-day period, the court can circumvent the law that way, but where the sentence has been validly modified for reasons unrelated to any desire on the part of the court to evade the 30-day requirement -- which is I think what is raised in those two cases, I don't read the case as requiring that -- what happened here?

We reduced the sentence?

MR. VIVIANI: That is part of it, Judge.

THE COURT: There was a motion to reduce the sentence?

MR. VIVIANI: Not really. I raised that, but let me address it.

MR. GOURAIGE: You reduced it from 3 years to time served.

MR. VIVIANI: On July 7.

MR. VIVIANI: On that case, the one Mr. Gouraige just handed up, talks in terms of has to be brought within 30 days of the sentencing process. If ever there was a sentencing process, this has to be the longest sentencing process I have ever witnessed. If I may just recount, April 19, 1988 --

THE COURT: Your argument makes it look as if you have plenty of time to ask for it.

MR. VIVIANI: June 10 was the day where we had a hearing and at the end of the hearing the court said, if you recall, you were prepared to impose a sentence of time served. However, there were two problems, as you viewed it:

1. The first problem was how will this look to Great Britain, a practical problem;

2nd. More importantly, how will this look, on behalf of the --

THE COURT: I was concerned about his safety.

MR. VIVIANI: You told us to come back on Monday and give us a number where he would be released immediately because of time served even if it were 10 years because of the guidelines. Mr. Gouraige and I both checked with probation and we found that you really couldn't, except on a three-year sentence because with a three-year sentence with time served, with good time he had, that would reduce it to time served.

I specifically remember saying to your Honor, "But give us two weeks to surrender, Judge, because of what I want to do, and ROR him and get him out now because I know they won't get the judgment and no decision will be made at the MCC until like a week after the sentence because of the paper flow."

I asked for 10 days or two weeks. Your Honor at that point said 30 days. The very next day I went to the Bureau of Prisons with Mr. Gouraige, explained the entire problem with them and said look, let's have all this done so the man doesn't have to surrender on the 13th.

I wait a week. He and I begin calling and writing the Marshals, the Bureau of Prisons. We then find out that he would have to surrender and they lost the judgment, so what we do is we come back into court, explain the problem and say, "Okay, Judge, please give us your originally intent that you wanted to do on the 13th of June."

At that point in time you said we agree to time served and, in addition to that, no surrender on the 13th and let's have another judgment, and that is what happened, your Honor.

I think it was a process that ended on July 7 and a motion was filed yesterday and we are timely. In addition to that, your Honor, the resentence on July 7 was not done solely to meet the 30-day requirement of the immigration law, nor is it being done nunc pro tunc. It was a real situation that we had and your Honor, I think, recognized that, especially with the new judgment.

I would ask the court to view the circumstances as a process that ended on July 7 when the initial intent you had expressed on June 10 was actually set down both on

the record and on the judgment.

THE COURT: All right. My view of this, quite frankly, in looking at this case, is that the case is really kind of not applicable for either of you, in other words, it is not authority either way insofar as this case is concerned. It doesn't protect you, Mr. Viviani, because on the facts of the case, the court turned on the fact that the sentence imposed the first time was not valid and, therefore, the second sentence could be deemed to be the first sentence because the first one was invalid.

We don't have a situation in which the first sentence was invalid, so practically speaking, this case is factually inapposite to that case. However, the government's argument is equally unsupported by this case because while the case does stand for the proposition that the sentencing provisions should not -- recommendation provisions should be given restricted interpretation, it is plain from the Second Circuit decision that the purpose for that restrictive interpretation is not to have the judge, long after the event, where the sentencing facts are not fresh in the judge's mind, make a recommendation which should be made as close to the time of the sentencing process as some of the judge's memory of the case is fresh.

What the case suggests and the cases cited in the case you suggest, if the government uses basically a

nunc pro tunc approach or if he, in effect, uses any device which is really designed to circumvent the 30-day period by extending that period beyond the 30-day period, that that is really what Congress doesn't want him to do. It is very clear from the legislative history that Congress rejected all attempts to stretch out this period for a reasonable time because Congress wanted the judge to make that recommendation as close to the time of sentencing took place as possible, which is within 30 days thereafter.

This case is kind of sua generis because when sentence was first imposed on June 10, as Mr. Viviani correctly notes, there was certain sentencing concerns that would have justified at that point adjournment of sentence until those issues were resolved. Instead the parties chose to go forward with the sentence, with the understanding the information is to be brought to the court's attention later.

This, in my view, makes this case not within those classifications where the making of the recommendation 30 days after June 10 would be circumventing the Congressional intent or Congressional policy and having that recommendation made within 30 days. In fact, if anything, it would, in effect, penalize the defendant here because he and his counsel chose to go the sentence-subject-to-amendment route rather than the

adjourning-the-sentence route which, if they had done it that way and I imposed the sentence with finality that I did impose on July 7 and never imposed any sentence at all on June 10 or 14, it wouldn't be any problem.

I don't think it would be a fair reading of this statute to say that it is a recommendation made within 30 days of the time that the court finally fixed the sentence, because I think I did indicate during the sentencing process, as Mr. Viviani points out, that the actual sentence imposed really should amount to a time-served sentence, but there were considerations which I mentioned in that proceeding which required that I do it another way, and when it turned out that it could not be done the other way, the court went the time-served route, which is probably what I would have done when I first sentenced him, so that whether you regard it as a motion to reduce or regard the first sentence as not intended to be the final sentence, but a sentence subject to modification when the court had all the modification when he would be actually released.

I think this recommendation or request is made timely and made within 30 days of the time the final sentence was finally determined and certainly within the Congressional intent, in my view, that the court make that recommendation at the time the matters are fresh in the

court's mind and for all of the reasons why I gave the sentence which I did give, which was a rather moderate sentence in view of the serious allegations involved, taken into account this defendant's yeoman efforts on behalf of discovery which I mentioned at the time I sentenced him, it would be in my view an unquestionably appropriate case to make the appropriate recommendation under the immigration laws and, therefore, I do make the recommendation in the absence of opposition by the government.

There is one deal I can't deal with and that is bail. That has to be raised.

MR. VIVIANI: It is my understanding that the government is dropping two other charges. There were three charges. I believe this decision will take care of one. The government, I am told, is dropping the 828, 826 charge, which, in effect, would mean that he is out.

THE COURT: That is not before me. Does the government object to the form of this order?

MR. GOURAIGE: No, I don't.

THE COURT: If it is wrong, the Immigration Department is not going to accept it. You can do what you have to do and you can litigate it in an appropriate court.

MR. VIVIANI: Judge, I would --

THE COURT: Is there an exclusion of deportation?

MR. VIVIANI: Exclusion, Judge.

THE COURT: Is he in or out?

MR. VIVIANI: He is in 201 Varick.

THE COURT: How come it is excluded?

MR. VIVIANI: He was coming back in.

MR. GOURAIGE: He was detained when he was trying to enter the United States and because he was traveling on what was an expired non-immigrant visa, he really has never lawfully entered the United States. That is why there was an exclusion.

THE COURT: I can't make a recommendation to consider exclusion because --

MR. VIVIANI: There are two cases that allow that, Judge. It is in our brief.

MR. GOURAIGE: The recommendation your Honor would make would apply to deportation or exclusion.

THE COURT: If you don't object to the form of the order, I will sign it.

MR. GOURAIGE: I don't.

THE COURT: I'll correct your order. You have "exclusion" in one place and "deportation" in the other.

MR. VIVIANI: I am sorry.

Your Honor, it is my understanding -- we had "and/or exclusion", "and/or deportation" in there, your Honor -- it is my understanding that the government is --

THE COURT: I put it in all places.

MR. VIVIANI: Thank you. It is my understanding that the government is going to drop the two other charges, which are the 820 and the 826 charge. One of the reasons why -- the second reason for this conference was it created a problem for us because we didn't know how to withdraw it. When a person is held with exclusion, he is not entitled to bail, he is entitled to parole, and that is in the sound discretion of the assistant director, Christine Peterson.

Part of my concern, if your Honor signed this order, it would leave 820 and 826 as a basis to exclude him.

THE COURT: I don't know what you're talking about. You're throwing numbers at me.

MR. VIVIANI: I am sorry. Let me let Mr. Belote do it.

THE COURT: Are you the immigration expert?

MR. BELOTE: Yes, your Honor. I used to be the assistant.

When the gentleman came back in, he was placed under exclusion proceedings, his body is here but legally he may as well be in a foreign consulate. There is no bail, but there is parole under Section 1182 (d) (5) of Title VIII. That is discretionary. We are confronted with this situation where the government had charged three basic violations, excludable offenses:

1. The conviction, that one is out now;

2. Basically misuse of a non-immigrant visa; and

3. The congruous of that, your green card is no good. There appears to be no basis for that any more if, in fact, they are dropping the other visa counts.

We are now in a situation where proceedings are still being held. Unless the government is going to tell us they're dropping everything right now, there is a hearing scheduled at Varick Street before an immigration judge on Monday.

The substance of that hearing and the defense to any existing charges are going to relate to matters that your Honor has ordered sealed. We are in a difficult situation because we can't even talk to immigration officials unless you permit that, your Honor, to disclose certain facts which would bear on his defense.

Now, the other side of that with respect to his release, your Honor, is under those limitations, I called Miss Frame yesterday and explained the problem to her. She is the deputy legal counsel for the district, and I spoke to Mr. Blackman this morning. I explained I can't put anything in writing to justify a parole application because the substance of that would violate your order, my hands are tied and the burden is on me to show the emergent reasons for parole.

THE COURT: If you want me to lift the sealing

order?

MR. BELOTE: I would like you to do that, your Honor.

MR. GOURAIGE: The government would oppose unsealing any of the records in this case.

THE COURT: Then you drop the immigration proceedings.

MR. GOURAIGE: It will all be moot on Monday, your Honor. The judge is advised the expired visa and green card will be dropped, the charge regarding the conviction has now been mooted by your Honor's ruling, and so I think that the outcome of the proceedings on Monday will be that Mr. Zein will be released.

MR. BELOTE: Your Honor --

THE COURT: If he is not released --

MR. VIVIANI: Why not now?

MR. BELOTE: Why not now?

Why can't we consider it my oral application, exhaustion of administrative remedies and, your Honor, you can --

THE COURT: I have no jurisdiction to act.

MR. BELOTE: Yes, you do, you can review the denial of parole. You are limited in terms of your review ability on abuse of discretion.

THE COURT: That is not a related case as far as

I am concerned. Go to the part one judge.

MR. BELOTE: If all matters are sealed and the only person --

THE COURT: I understand that. I am going to tell you that I don't have any jurisdiction to act on an application to review them for an abuse of discretion for not granting the parole because that is not related to the case I have.

Now, I do have jurisdiction over what should or should not be unsealed and I will tell the government right now that whatever national security interest they have got, the law is simple, if the government is proceeding one way, which requires confidential or national security information to be disclosed, they have their choice, either drop the ball or you play.

MR. GOURAIGE: That's correct.

THE COURT: If you play, you will have us all in the New York Times on Monday morning.

MR. GOURAIGE: That's correct, you're absolutely right, but I don't think the government will choose to do that choice.

THE COURT: What is the INS doing in this case?

MR. VIVIANI: He had to leave the country after the sentencing. An article appeared --

THE COURT: Bureaucracy going wild is what it is.

MR. GOURAIGE: Actually, it is not -- in defense of the INS, what happened is Mr. Zein left the country.

THE COURT: I know he left the country.

MR. GOURAIGE: If we had known about that, it could have been handled differently, but when he tried to come back, he presented the immigration officer --

THE COURT: In any event, there is no need for me to do anything today.

MR. GOURAIGE: That's correct.

THE COURT: If he is not released on Monday, I will not be here, but reachable by telephone. Call my chambers and I will give instructions accordingly depending on what I have to do.

MR. GOURAIGE: Okay.

THE COURT: I will not go to the end of the world. I am in daily communications with my chambers when I go on vacation and I will probably be back next Friday, so at least for a couple of hours on Friday. If something has to be done on an emergency basis, call my law clerk, leave a message with chambers and I will act accordingly, but it would be the better part of insanity for the government to proceed with an exclusion in this case which would require --

MR. GOURAIGE: I don't think that will happen.

THE COURT: That is crazy. From your point of

jah



view, Mr. Viviani, you probably should have told us --

MR. VIVIANI: Sorry?

THE COURT: -- you should have told us he was going because if his name is on a list and he doesn't have a valid green card, they're going to stop him, they're bound to stop him.

MR. VIVIANI: He had a valid green card, Judge. His visa had expired.

THE COURT: If his visa is expired, he can't come back in.

MR. GOURAIGE: The odd thing, Judge, if he had presented them with the green card, he would have gotten in, but he presented with a visa and the immigration officer had a person with a valid green card and expired visa so they had no choice.

MR. VIVIANI: What happened is the agency gave him the green card and held it for a period of time, giving him a five-year visa. They wanted him to travel just without the green card so in case he was caught, they would see the visa. He went back and forth on their business with the visa.

THE COURT: He didn't have a green card?

MR. VIVIANI: When he comes into immigration, the immigration officer sees all these entries and exits with the visa and green card, he says, "Hold it, what are

jah



you telling us you're not a" --

THE COURT: If you had told him he was going to go out of the country, he wouldn't have dealt with this problem by telling immigration to not let him in. Everybody dropped the ball a little bit and is not entitled to --

MR. VIVIANI: Your Honor --

THE COURT: Let's solve it the best way we can.

MR. GOURAIGE: May we have the transcript sealed?

THE COURT: Yes, seal the transcript. It is now 10 after 6:00 and my vacation has officially begun.

(Court adjourned)