# UNITED STATES
# COURT OF FEDERAL CLAIMS

FILED
NOV 26 2001
U.S. COURT OF FEDERAL CLAIMS

MUSTAFA M. ZEIN, )
Plaintiff, )
v. ) Docket No. 99-244C
THE UNITED STATES, )
Defendant. )

TRANSCRIPT UNDER SEAL

NOT FOR PHOTOCOPYING

Pages: 1 through 42

Place: Washington, D.C.

Date: October 29, 2001

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MUSTAFA M. ZEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 99-244C |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Room 715
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Monday,
October 29, 2001

The parties met, pursuant to the Notice of the Court, at 10:05 a.m.

BEFORE: HONORABLE ERIC G. BRUGGINK
Judge

APPEARANCES:

For the Plaintiff:

MUSTAFA M. ZEIN, Pro se
c/o Robert W. Thabit
172 82nd Street
Brooklyn, New York 11209
(212) 862-4381

For the Defendant:

LISA B. DONIS, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6289

P R O C E E D I N G S

(10:05 a.m.)

THE COURT: Good morning.

MR. ZEIN: Good morning, Your Honor.

MS. DONIS: Good morning, Your Honor.

THE COURT: All right. Mr. Zein?

MR. ZEIN: Yes, Your Honor?

THE COURT: And, Ms. Donis?

MS. DONIS: Yes, Your Honor?

THE COURT: As you know, unfortunately, because of Judge Andewelt's death, the case had to be reassigned. And it's now on my docket. We need to sort of touch base and figure out exactly where we are and what's doable under the present state of filings.

As I understand it, there are two government motions pending to dismiss, one based on the Totten Doctrine of inherent secrecy and the other on the statute of limitations. Is that basically procedurally correct?

MS. DONIS: That's correct.

THE COURT: Okay. And Judge Andewelt had directed that the government pursue discovery really with respect to both points, one as to the secrecy or not of the contract, and the other as to whether or not there's a factual basis for waiving the limitations period. Also correct?

MS. DONIS: That's correct.

MR. ZEIN: That's correct, Your Honor.

THE COURT: And then the government responded to that invitation basically by saying we can't do any discovery.

MS. DONIS: That's right.

THE COURT: Let's talk about that first.

MS. DONIS: Okay.

THE COURT: The plaintiff is saying that the contract is not of a secret nature; and, therefore, the government shouldn't have any qualms about doing discovery. In the affidavit and the status report that the government gave me, the suggestion is made that we really can't ask questions without sort of tipping our hand in some way.

MS. DONIS: National security matters, Your Honor. And also we had filed a declaration with our second motion, our Totten motion, which made it clear that the CIA doesn't enter into any noncovert contracts. So, if this one existed, it would have been secret.

THE COURT: Well, I assume that if the CIA plans to build a new headquarters.

MS. DONIS: Well, right.

THE COURT: Okay. So how do I know that --

MS. DONIS: But this is by the facts alleged in Mr. Zein's complaint this was clearly a covert operation and declaration filed the CIA made it clear for these kind of

services, secret services, the CIA simply doesn't enter into any contracts that are not covert.

THE COURT: All right. So you're relying, in all respects really, on all the plaintiff's allegations?

MS. DONIS: Right, allegations in his complaint.

MR. ZEIN: Your Honor? May I speak, Your Honor?

THE COURT: Yes. Go ahead. Let me turn up the speakerphone, or else I need to ask you to speak a little louder.

MR. ZEIN: Yes, Your Honor. I have a three-minute statement which summarized all that, so I put my thoughts in order. Would you allow me to address the Court on that subject, because I will cover all these points.

THE COURT: Go ahead.

MR. ZEIN: First and foremost, Your Honor, I respectfully offer my condolences to this Honorable Court for the passing away of the Honorable Judge Roger Andewelt.

THE COURT: Thank you.

MR. ZEIN: May the most merciful creator of all rest his soul and bless his memory in eternal, infinite reality of true being. In the status of this case, Number 99-2446, the status is still at the same point after the failure of defendant to comply with the two Court orders in addition to a final warning by Judge Andewelt at the end of the status conference of April 12, 2001.

The defendant defaulted in spite of the Judge's warning. It's self-evident that we cannot go forward, Your Honor, litigating this case when defendant has absolutely refused to participate in any deposition whatsoever pertaining to this case.

Evidentiary hearings, or any discovery hearing, are now an impossibility in this case. The only hearing which I, plaintiff, participated in was in New York when I was a defendant. The record of that hearing was destroyed and stolen by the government.

And when Judge Andewelt requested the transcripts of the April 22, 1988 hearing from the government, which was recorded in the docket of the case U.S. v. Zein, the government defaulted and could not produce, among other requested court records, which also were stolen and destroyed by the government. What was not stolen was forged and falsified.

The bottom line is that the government is not going to allow me to take a stand to bring witnesses and evidence under oath in any way, shape, or manner. And the government, which is the defendant in this case, has already stated its absolute refusal to any deposition in writing several times to this Court.

Judge Andewelt's last opinion to the defendant on April 12, 2001 was that he would not take the government's

word on any issue without deposition under oath. If the government refuses to defend itself, then, he, Judge Andewelt, would know what to do. The government refused to budge.

And the Court was informed by defendant that it could not comply while plaintiff accepted, without any reservation, the Court orders. Judge Andewelt did not even take into consideration the defendant's declaration under penalty of perjury, because it was not and still is not the truth. And here is the proof that has been recently made which is beyond any shadow of doubt.

The defendant's declaration stated the CIA does not engage in any mediation or the brokering of agreements on behalf of the White House, because it is the job of the State Department. This false statement was intentionally made to paint the contract in this case as covert, not overt, and diplomatic in nature.

Plaintiff provided the Court with ample evidence that the CIA was engaged in the Middle East with extra dimensional function that exceeded its role, because the President of the United States ordered it to do so.

That is why the CIA has to seek permission from the White House to keep its contact with me as the FBI document in the appendix testified to this factual event, which is the absolute truth. While defendant was actually

perjuring himself individually and institutionally in front of this Court, the director of the CIA was fully engaged in a diplomatic mission in the Middle East which culminated in the defendant's agreement. Quoting *The New York Times* article, Your Honor, on June 16, 2001, an article written by Douglas Frantz, F-r-a-n-t-z, and James Risen, R-i-s-e-n, headed as the headline: "CIA chief proves his Middle East skills."

And to quote the last paragraph: "Tenants' role as an mediator in the Middle East began in 1996 during the Clinton administration and continued through the Camp David Peace efforts late last year.

"At first, the Bush administration signaled that it did not want him to continue in that role. And Tenants also made it clear that he did not relish the task and was, therefore, happy to back off. Part of his reluctance was almost certainly because the role of sudden diplomacy, even if it is limited to security matters, is far outside the job description of the CIA chief.

"The agency's normal task is to work in the shadows collecting information which is then passed on to the president and other U.S. policymakers. The CIA is supposed to stay clear of policy decisions, to hear and not to be heard, to see and not to be seen, as Tenants once described.

"The job of international agreements traditionally belongs to the State Department and the White House. But, as the crisis worsens again this year, the Bush team turned to Tenants to use his relationships he has developed in the Clinton administration to gain at least a temporary respite from the violence."

It is the very same thing which the White House exactly this, in this case in front of this Court, as I, plaintiff, claimed all along. In effect, the government has intentionally rested its defense in this case by its default and will never participate in any deposition to avoid much greater harm which will open cans of worms of extreme criminality.

It is for this very reason I, plaintiff, attempted to file under seal, not to protect myself, but to protect the government which rejected my help, as the record shows, to score points in -- way against its internal opponent.

Only after pressure from this Court, the government relented and changed its position on the issue of sealing the record or not. That is also why I completely refused to involve the news media in this case, which could have brought a quick settlement. I chose the long way home to protect innocent lives and not to give any comfort to the enemies of the United States by providing incriminating information which might justify violent actions against the

United States.

The defendant, by resting his defense on default, by not complying with the two Court orders and refusing to participate in any deposition is a clear signal to this Court that defendant is no longer able to go forward on its own in this case. And that secrecy needs relief from the Court.

Defendant will never attain any relief if this case goes to a district court for violating my civil rights, which holds no statute of limitations and which will quickly assert the position under oath against such deposition, will create havoc, especially in these days where America is literally struggling for its peace and security like no other time in its entire history.

My warning and prediction, filed as part of this Court record, testified clearly to my sincere concern for the safety of this country. It really has become a necessity to obtain a closure which is equitable and just in this case now without any further delay.

And the only one who can bring it forth is this Honorable Court, especially when the government has already made it expedient and extremely possible by committing default by its noncompliance with the Court record. An equitable and just settlement in this case is the only solution which gives me, plaintiff, back my life without

harming the institutions of the United States Government in a time which is extremely perilous, to say the least.

I have put my life numerous times on the line in defense of America, not because of its power and wealth, and not for any gain whatsoever. My love for this country is entrenched in my soul because of the ritual conviction which is held by a knowledge of certainty, not by mere belief, which carries doubt. The American experience is a work in progress, designating the ideal path for all humanity in establishing one human race in unity that transcends ethnicity, darkness, and color and which celebrates its diversity by sincere scholarship.

I've protected this country with my life. I have never allowed a few unconscious individuals to drive me to hate and revenge in spite of the fact that they would have been more merciful if they would have put a bullet in my head instead of the harm inflicted on me and on my family for the last 16 years.

Nevertheless, I tried, as humanly as I could, to uphold this inner knowledge by living it. That is why I sought, and am still seeking, justice that is tempered with mercy. This government, because of fear, never extended a hand of mercy to me in the last 16 years in spite of the fact I always refused to strike back in the same unconscionable means used against me and against my family

in Lebanon to dissuade me from seeking a trial in New York and to prevent me from filing a case in Washington, D.C.

When America was in need and asked for my help, I was and always will be ready to do all I can. I respectfully submit to this Honorable Court that it is now the time for the Court to speak in truth and in a resolute manner upholding justice that is tempered with mercy by endorsing and effecting a settlement that is equitable and just to plaintiff while saving the standard from an actual trial which will cause great harm to America.

I thank this Honorable Court for giving me this opportunity to address it. And may God bless this Court and bless the United States of America by preserving its peace and security.

THE COURT: All right. Thank you, Mr. Zein. The issues that I want to talk about are more procedural in nature for the time being.

Ms. Donis, the Totten defense, as I understand it, in an evidentiary application requires the invocation of the states-secrets privilege by the head of an agency.

MS. DONIS: Right.

THE COURT: And that has not yet happened.

MS. DONIS: No, because we haven't had to travel down that road.

THE COURT: All right. So, in terms of what

you're relying on in the short run, you're saying that the very nature of the plaintiff's allegations suggest that Totten, not in an evidentiary sense, but in the sense of the nature of the contract alleged, keeps it from being litigated at all.

MS. DONIS: That's correct.

THE COURT: And you're relying on the affidavit of -- I've forgotten the gentleman's name now.

MR. ZEIN: Dane.

MS. DONIS: McNair.

THE COURT: McNair.

MR. ZEIN: Oh, McNair. I'm sorry.

THE COURT: Mr. McNair.

MS. DONIS: That's right. Mr. Zein's complaint coupled with the declaration.

THE COURT: And what do I make of the fact that the plaintiff now says that the contract was not secret? And he's willing to talk about it. And why can't the CIA?

MS. DONIS: Oh, he may be willing to talk about it but, as we explained in our status report, any questions that we would ask would necessarily tread into waters involving national security.

And I think by his comments that he made this morning, the comments made it clear that anything we would ask him, anything that he would talk about, would invoke

matters of national security. And we can't go down that road when we think we have a good Totten argument without taking his deposition. And --

MR. ZEIN: May I speak, Your Honor?

THE COURT: Well, just one minute Mr. Zein. Let me ask Ms. Donis. I'm a little puzzled at how you think this defense works under the circumstances. I mean you're relying on Mr. Zein's allegations, but only up to a point. And I guess I'm asking the question why does it reveal anything protected for you to ask the plaintiff in a deposition precisely what is it that you're alleging?

MS. DONIS: Well, any questions that we ask has to involve -- I mean we would have to ask him questions involving individuals he may have dealt with, relationships with different agencies. He would have to give detailed explanations of that.

And, if his story has any truth to it, all of his answers would reveal potentially classified information, particularly those where he's talking about his role with the CIA and his actions involving terrorists. Anything of that nature would reveal, if true, classified information.

MR. ZEIN: We can put it under seal, Your Honor.

THE COURT: Right. And if Mr. Zein already knows this, I'm still not sure I understand what --

MS. DONIS: Well, we can't -- even if we -- any

kind of deposition in a setting unlike this one would involve my having the opportunity to confront him with documents, statements, some sort of -- any kind of facts that I have.

I don't have it at my disposal, because we're precluded from using any of those techniques. If there's any evidence of Mr. Zein's story, we can't use that. It would be classified information. So --

THE COURT: Well, the Totten --

MS. DONIS: -- you don't have anything. We go into a deposition, any questions we ask and any answers he may give might reveal classified information. I don't have any documentary evidence that might contain classified information if it exists. And what we have now is a story, Mr. Zein's complaint, that sets forth a scenario that clearly demonstrates a covert contract.

We have the CIA attesting to the fact that they don't enter those kind of contracts overtly. And Totten, in the Supreme Court, that's exactly the scenario that the Supreme Court was looking at in Totten and that the federal circuit also agreed with in the Guong case.

MR. ZEIN: Your Honor, may I speak?

THE COURT: All right. Go ahead.

MR. ZEIN: Your Honor, when Ms. Donis is saying covert contract, it was not the covert contract with the

CIA. It was a contract with the White House, with the CIA as witness, as a go-between.

Your Honor, because you see the thing is if the CIA had a covert contract, it means it had a special type of permission from the Oversight Committee in Congress that endorses such contracts and allows the CIA to allocate certain funds for it which is not the case.

That's why the contract cannot be covert, because there is no such finding -- there was no such finding -- and I will swear on everything -- so God help me that I'm telling the truth, because it's very easy, Your Honor. All you have to ascertain in this is if the contract was covert or not.

Let them file an affidavit under oath that there was a finding without discussing the terms of the contract. If there was a finding, an allocation of budget from the Oversight Committee, because there is no covert operation without an Oversight Committee budget, Your Honor. If they can swear under oath that this -- that the contract was covert and cannot be discussed because it has a finding and the director has the finding in his hand in the CIA, then it will resolve the matter, whether it is a covert or not.

But they are not going to do that, because they cannot invent such a thing, because it never happened. They are hiding behind national security, Your Honor, in order

not to be accountable, not for national security.

If they were worried for national security, why did they, when I filed for filing under seal, why did they say they neither cared nor opposed? And now, suddenly they have worried about national security. It's deplorable, Your Honor.

I included articles from *The New York Times*, Your Honor, in the appendix testifying to the truth. By whom? By the Honorable Jeffrey Smith, the general counsel of the CIA, the former general counsel of the CIA, justifying the extra dimensional role of the CIA that was playing in the Middle East now, because of the precedent action of the White House with the CIA in the '70s. And who gave the CIA, Your Honor, that role? I did with Bob Aimes (phonetic).

MS. DONIS: Your Honor, even if Mr. Zein's story is true, and even if now it came to light that it was true, that doesn't mean that at its formation -- it wasn't secret. And Totten stands for the proposition that even if the events later come to light in a newspaper or in some other public forum, if the nature of the contract was covert, then Totten applies.

MR. ZEIN: Your Honor, how were we going to keep our lips sealed in such a Totten contract when the contract was to be addressed to many parties in the Middle East? You see, the whole idea of the Totten, Your Honor, was to give

denial to the White House because it was a despicable operation.

Intelligence at the time of President Lincoln was a despicable type of operation. And Totten was paid. I was never paid by the CIA. I always gave my -- I gave hundreds and hundreds of thousands of dollars for the protection of America, not the other way around, Your Honor.

So painting me as an agent in a covert contract is adding insult to the injury. And that's why I will fight them in Court to the last minute of my life. I already stated, Your Honor, that I chose your Court, this civil Court, intentionally because I do not want to harm the government, because I could go over across to the district court, you know, which awarded a related case of the hostages in Lebanon hundreds of millions of dollars, Your Honor.

And I would grab every official by the collar and drag him to court by subpoena in the first two weeks of discovery, Your Honor. This is -- we are wasting time. They are -- I mean it's an act of futility. Even if the government wins in this Court, it's going to lose big in the second court.

And I chose this Court consciously, Your Honor, because all I'm trying to get back my life and a compensation for all the harm they did instead of putting

people in jail if I go to the court, to the district court.

THE COURT: All right. Let me --

MR. ZEIN: Fine.

THE COURT: -- if I can ask a few more questions, Mr. Zein. Where is it or do I have an affidavit from you that outlines the basis for the argument that your claim could not be brought on time? In other words, the government has two arguments. One is Totten, and the other is that the --

MR. ZEIN: You want me to speak, Your Honor? Is this record opened or closed?

THE COURT: It's -- this is on the record. We're -- there's a court reporter present. And we can --

MR. ZEIN: Under seal?

THE COURT: I can put it under seal if we need to.

MR. ZEIN: Permit me to answer that question. And if the government wants to seal it, I have no opposition. But I already vowed not to play that game again. If they want to seal anything, let them seal it themselves.

THE COURT: Well, before you go into the details, then, in other words I don't have, as I understand it --

THE COURT: You already have -- of course, I have a couple of briefs, Your Honor, under seal which I introduced on that subject.

MS. DONIS: I don't believe there are any

declarations, though.

THE COURT: Right.

MR. ZEIN: And you see, I don't understand -- because if the judge asked me, I said I am ready to swear that everything I filed will be under the penalty of perjury. And I already, since the last statement on answering the declaration of the government by the CIA, I filed it under the penalty of perjury.

And I swore at the end of that that everything pertaining to the case can be considered under penalty of perjury. And, as a matter of fact, during the conference of April 12th -- may God rest his soul -- I asked him -- I said please, you can ask me any question under oath.

THE COURT: All right.

MS. DONIS: But in the first hearing -- and I was not the attorney at that time on the case -- but in the first hearing, on our first motion on the statute of limitations, in open Court Mr. Zein made no allegations that his life was in jeopardy and that should uphold the statute.

And it was only after that in written comments to the judge where Mr. Zein made those allegations. And I don't think those allegations were made in the form of a declaration or an affidavit.

THE COURT: All right. Let's assume that we have an affidavit from Mr. Zein, which outlines the basis for his

claim that the case couldn't have been brought earlier.

MS. DONIS: Okay.

THE COURT: What is the law on the subject of whether or not a reasonable fear of injury or death or something tolls the limitations period?

MS. DONIS: I don't believe that it does, Your Honor, because we then -- I wasn't a party to the first motion and then we decided to file the Totten one thinking we didn't even have to get into the first motion because we had Totten, I haven't done the research on that. But it's my understanding that it would not toll the statute.

THE COURT: Well, Mr. Zein, one of the awkward things about the lawsuit is because you don't have an attorney, it procedurally makes things a little bit awkward. For example, one possibility is that your attorney, if you had one, could depose you and lay out the circumstances both for not bringing the claim earlier and for why you think this was not a secret contract.

You don't have to have an attorney. And I'm not suggesting that. But, as an alternative, in order for me to have a better record to understand exactly what the facts are on these jurisdictional questions, because that's what they are, I think it would be helpful if I knew precisely what it is you're alleging --

MR. ZEIN: Okay.

THE COURT: -- in both respects, why you think -- what the terms of the contract were --

MR. ZEIN: Okay.

THE COURT: -- and whether or not it was secret, and also the second issue: Why you delayed in bringing the suit?

MR. ZEIN: Okay.

THE COURT: One possibility, Ms. Donis, obviously is if you don't want to depose the plaintiff based on the affidavit, I might want to hear him in Court myself. And if I ordered that, what would be the government's response?

MS. DONIS: I don't know, Your Honor. You know if it came to that, we might have to invoke national security, state secrets.

THE COURT: And how would that apply when it's the plaintiff testifying and not --

MS. DONIS: We wouldn't be questioning him in any way. It would just be the Court.

THE COURT: Right.

MS. DONIS: I don't know. I don't know if that's come up before.

THE COURT: Right. I don't think that the evidentiary privilege would apply in those circumstances.

MS. DONIS: If we were the one questioning him.

THE COURT: Right.

MS. DONIS: No? I mean we wouldn't necessarily have the privilege then. But I don't know. I mean I'd have to look into that.

THE COURT: Well, all right. I think in order for me to understand exactly the plaintiff's response to these two motions, I need to have the plaintiff under oath in an affidavit of some kind outlining the response to both of these, explaining why the contract, he believes is not --

MR. ZEIN: Would you like me to write you a brief under oath?

THE COURT: Well, what I don't need is a brief. What I need is the facts as you see them.

MR. ZEIN: Exact events, one, two, three what happened.

THE COURT: Correct. And I want you to go ahead and file it under seal --

MR. ZEIN: Yes.

THE COURT: -- because I don't want any concerns on your part that you're pulling any punches.

MR. ZEIN: No. Your Honor, first let me respond to Ms. Donis when she said the first time I brought it up. During that hearing on January, Your Honor, there was a journalist -- two journalists in the audience whom I recognized.

And when Judge Andewelt asked me this question, I

gave him half of the actual -- you know, what happened. But I did not give him the full proof, because I said, Do you want me -- I already said, Do you want me to speak now? Secondly, it's not the first time I mentioned it to the Court.

If you -- there was in August a brief concerning the -- whether the record should be under seal -- the appendix should be under seal or not. I mentioned in the paragraph about that individual who is a fugitive from justice from Lebanon, what he was doing in the United States and how this pressure was affecting my family.

Look, Your Honor, you see we have a proverb in the Middle East. It say: The book is read from its title. Have you ever heard of somebody being indicted after being asked by the government to do something, and then a bogus conviction takes place?

And then they go and clean the whole chamber of the judge, the Clerk's Office in New York, my lawyer's office, thinking that all the documents have been destroyed and cleared. If somebody is trying to cover up and make a sweep, a clean sweep, of every possible document that took place in New York, have you ever heard, Your Honor, of somebody who's got a criminal record and he gets the judge, not once but twice, to confirm that he told the defendant that he was the only innocent man in his Court? Now ask,

Your Honor: Why is it defendant didn't scream his lungs out to the world?

THE COURT: Okay.

MR. ZEIN: There was no pressure. If there was -- I'm just, without giving any details in this open hearing. I'm just giving you indications, Your Honor, what will be coming in this affidavit or whatever questions the Court wishes to ask. I'm not talking about a certain fear, nondescriptive in nature. No, actual events that the government took to prevent from going further.

THE COURT: All right. I said I didn't want a brief. There is a legal question and I've already asked Ms. Donis. Assuming then that I have an affidavit from you outlining the facts on both of these points whether or not the contract was secret or not; and what your basis is for saying that the government, in effect, kept you from filing the lawsuit by what it did, there's still a legal question and that is, you understand how the statute of limitations works.

It's six years from the date of the contract. You have to bring the action or it's too late. And, on the face of it, we're talking about more than six years between the time of the contract and the action being brought, several years more. And so you have to explain why that doesn't matter, in effect. And I'll warn you, the law is not very

friendly in that respect.

MR. ZEIN: Right, Your Honor.

THE COURT: And so even though I don't -- I said I didn't want a brief on the first two points, I do want you to address, as best you can, what you think the law is on whether or not there are any exceptions to the running of the limitations period.

MR. ZEIN: And let me understand you, Your Honor, we -- you're asking me whether even if there was danger to my life and to somebody I love's life, maybe the law does not give me extension.

THE COURT: Correct.

MR. ZEIN: How would I know if the law does give me extension if there was danger or not?

THE COURT: Well, this is the disadvantage of not having a lawyer. This is really a lawyer kind of question.

MR. ZEIN: Well, what's the exercise of even mentioning this thing? You see, why are we putting the cart in front of the horse? Let me have an indication, Your Honor, from the Court because, you see, to me I can always go and file in a District Court.

THE COURT: Well, that's a fair question.

MR. ZEIN: Six years is more than enough of a sacrifice. I gave my word to certain individuals in this country not to harm the government and not to exploit its

weakness when they never gave me a minute of mercy.

Why do we have to go -- respectfully, I'm asking, Your Honor -- why do we have to go first? Let's decide if there was -- if there is a possibility in the law, if the law provides me with protection from time limitation, if my life or the life of my family was in danger, then we can go further and describe what was the events.

And I am ready to subpoena witnesses who are already in the United States and who are being protected by the government, who are fugitives of justice, who carried the government's acts in Lebanon on behalf of the government, and whom they really do not want them to be present in a court of law to be deposed.

THE COURT: I think you're making a perfectly legitimate point. I was trying to do two things at the same time.

MR. ZEIN: I mean that's beside the issue. If I can have relief from the statute of limitation, if I establish one, two, three things, then let's go on it. What is the use of making all this divulgence -- really against the government even though under seal and everything, because it's going to instigate investigation?

THE COURT: Well, here's one reason that I suggested doing it simultaneously. But, if there is an exception in the law, it may be very narrowly tailored,

depending on the facts. And so I need to have some generalized assertion, at a minimum, of who the danger was directed to and who was doing the threatening.

MR. ZEIN: Yes. I can name parties. I can -- I have the power to subpoena them here in the United States. The government has to bring them to court, because they are under their protection.

You see, Your Honor, let me tell you straightforward, the whole declaration that you have in hand by Mr. McNair has nothing to do with the contract, has nothing to do -- They are scared to death from me if I go on the stand and I ask the Court to subpoena that the degenerate killer they are protecting here in the United States who put the bomb that nearly killed me and who went to my family and did what he did. And he drove them to bankruptcy. That's what they are afraid of. You see, it has nothing to do with the contract. They do not want subpoena power to touch these people.

THE COURT: Well, here's what I'm trying to say --

MR. ZEIN: You see --

THE COURT: -- In your brief, if you want to address, first, the legal question -- and I think the government ought to be filed first in that respect -- I think --

MR. ZEIN: Let them file first, and let me see

what they have to say, Your Honor.

THE COURT: I know. But they have to have some understanding --

MS. DONIS: Know what the facts are.

THE COURT: Yes. We have to have some general assertion of the nature of the threat and whether or not it's coming from the government or from some third party.

MR. ZEIN: No, Your Honor, from the government. You see, when they drove me to the judge to plead guilty under pressure, I was -- three months, I was a hostage for 30 months in jail, Your Honor. You know part of the documents they stole was the conversations taped by the FBI by Court order during the administration of money to be paid to these people.

While I was talking to these people in the Middle East, I was also speaking to very high government officials who were begging me to do exactly what I did, who were begging me on the phone, the transcripts. The government thinks those transcripts were destroyed. No, I got copies of them.

Let me tell it for the first time, Your Honor, here now. I got copies of them. How could a government ask me to do something which is part of evidentiary objects in a court of law and then go and indict me for contacting a terrorist group at the same time? You see, that's why the

judge when he saw all these transcripts in court -- afterwards, I asked him, I said, Your Honor, I do not want to plead guilty to anything. I want to go to trial. I was prevented. Why? Because my family was a hostage in Lebanon, being pressured by that degenerate killer. You know, the chief security of the so-called Christian forces, or whatever you call them, these Lebanese forces, and who is a drug trafficker indicted in a court of law in New York.

THE COURT: Ms. Donis?

MS. DONIS: Yes?

MR. ZEIN: That's what I'm talking about, Your Honor.

THE COURT: Okay. Well, here's -- you understand the issue from my perspective? The government has to have some sort of a target to shoot at in terms of what facts are being alleged by way of a defense. Now, unless the government thinks it can argue legally that there is under no circumstances an exception to the limitations period, which I don't think is the fact --

MS. DONIS: No. I think there's probably a narrow window. If Mr. Zein sends me and sends the Court some sort of statement of fact, then I can respond to it legally. And then he can respond to that.

THE COURT: All right. Mr. Zein?

MR. ZEIN: Yes, sir? Yes, Your Honor?

THE COURT: I think even if we don't have a full-blown affidavit with all kinds of details, names, and that kind of thing, I think we have to have some more precision to as what it is you're saying the threat was that kept you from filing the lawsuit. And I need to have that under oath.

MR. ZEIN: Yes.

THE COURT: And in other words, in order to set up the question whether or not there is in the law an exception, we need to know whether or not if everything you say is a hundred percent accurate, then does it matter? In other words, does the law even care whether or not these facts are correct --

MR. ZEIN: Right.

THE COURT: -- because there may not be an exception, anyway. And so I think if there is an exception, it's probably sufficiently narrow that we need to know more about what it is you're alleging by way of a threat. I think it matters a lot what the source of the threat was --

MR. ZEIN: Yes.

THE COURT: -- and who it's directed at, so that I can look at the law and say, yes, this is the kind of thing that the law allows an exception for or not. So I do want to go ahead and require you to put something in writing in an oath form, alleging whatever it is you're comfortable

with to set up the legal question.

MR. ZEIN: Right. Because, you see, the bottom line, Your Honor, I had to wait until this man had to go and exile himself and has no power whatsoever left in Lebanon.

THE COURT: Well, all right.

MR. ZEIN: You see, that's how I coincided my time with his time. He took refuge in this country. And then I went full-blown at it.

THE COURT: Okay.

MR. ZEIN: You know, bottom line.

THE COURT: Well, you need to go ahead and put something in writing for me.

MR. ZEIN: I will, Your Honor. How long do I have?

THE COURT: Can you do something within three weeks?

MR. ZEIN: Oh, easy.

THE COURT: Well, if you can do it sooner, go ahead.

MR. ZEIN: Yes.

THE COURT: Let me just -- I'm give the government three weeks from whenever it receives Mr. Zein's affidavit.

MS. DONIS: Okay.

MR. ZEIN: I would just, Your Honor, write it like and I swear under the last paragraph, you know, imitating --

emulating the declaration that was given by McNair. Right?

THE COURT: Yes.

MR. ZEIN: Would be the same type of title you want.

THE COURT: Yes. If you want to borrow that language, I think that would be --

MR. ZEIN: Okay. Because, Your Honor, I don't want to -- because you see, I'm already, you know, in a secluded place, you know, away from all the press and all that thing. I've been trying to avoid them like a plague, lately.

And I don't want to talk to anyone. At the same time, I don't want to divulge too much information to anybody else, lawyers or no lawyers. You saw what happened, you know, that they put the lawyers -- they scared the wits out of every lawyer I talked to, you know, by putting them --

THE COURT: Well, I'm not asking you to put in that level of detail if you're not comfortable with it. I just need to know generally the kind of threats you are talking about, so that I can evaluate the legal issue.

MR. ZEIN: Right.

THE COURT: Okay. And then, after the government files its supplemental brief in support of that prior motion to dismiss, I would give you an opportunity to respond

within three weeks of that. And then I'll give the government, say, 10 days to file a reply brief.

Mr. Zein, here's something else you need to be thinking about when you do your response brief to the government: I'll be very straightforward with you. One concern that I have is the very nature of the -- of your response on the statute of limitations, it seems to me, strengthens the government's argument that this is the kind of case that Totten had in mind.

In other words, the kind of threats and risks and that sort of thing are precisely the kind of issues that Totten was concerned with. And so there's a certain, for lack of a better word, inconsistency on the one hand saying this was all open and above board, and, on the other hand, I was running for my life.

MR. ZEIN: No, Your Honor, it is not related, you see, because I'm running away for -- I'm trying to protect my life because of certain things individuals were doing outside the contract. Please, Your Honor, let's not confuse the issue.

THE COURT: Okay. I bring that up, because I want you to address it.

MR. ZEIN: No, the issue is very clear. And the contract was straightforward, open, and they made, you know, the government made appointments with ambassadors and

everything. It was a diplomatic mission. I was talking to everybody in the open, no secrets whatsoever. I was never told to keep it secret in that contract from anyone.

I'm talking about, Your Honor, that I was privy, an eyewitness, to some reasonable act being acted by members of the U.S. Government, you know. And they used that contract, they used the betrayal in that contract to keep me quiet because, Your Honor, everything is related. If I would have accepted to be part of the Iran-Contra, to open the account as I was asked by Casey and his company, you know, this would have never reached your Court.

I always refused to be part. It has nothing to do with the contract, Your Honor. All these allegations that I'm putting here and I'm ready to go and swear on them in an affidavit has nothing to do with the contract, absolutely nothing to do with the contract.

What does the contract have anything to do with covert operations of that thing and taking hostages of Lebanese and Palestinians during the marine states in Lebanon. Look at the article in *The Washington Post*, Your Honor, which I wrote. It was a covert operation with the CIA and I was trying to stop by individuals in the American government.

Before one American hostage was taken in Lebanon, 1,800 Palestinian and Lebanese were abducted and killed.

None of them, completely none, were saved, including the four diplomatic Iranian officials. It has nothing to do with the contract.

That's what they are afraid of, because if I say the attempt, the attempt has nothing to do with the contract. That's why I'm trying to separate the others. It has nothing to do with the contract, Your Honor.

THE COURT: Okay. Well, you can address that in your brief when you --

MR. ZEIN: The contract was straightforward, you know, straightforward diplomatic mission, because in Totten, Your Honor, a contract between two, the government and agent, and they have to keep their lips closed. Now, you tell me, Your Honor, how could I have kept my lips closed on the contract to fit Totten.

I wouldn't have been able to excuse it, Your Honor. Logic just is not there. It's not allegation. It's not my statement. It is a fact of life. How could I have kept my lips sealed under contract agreed upon through the White House, by the White House, witnessed by the CIA? I wouldn't have been able to excuse it. That's the point, Your Honor. It has nothing to do with Totten.

THE COURT: Okay. I bring it up not to try to resolve it now, but because I want the parties to consider that.

MR. ZEIN: Because it's not doable, Your Honor. My point is not whether proof or not. If the contract is doable to be covert, then you know it's impossible. How could anyone excuse a contract and keep his lips sealed between the American government and that contractor? It's impossible to do, Your Honor. That's the point. I mean logic -- I mean there has to be some logic in the case.

THE COURT: Has there been any requests for discovery so far?

MS. DONIS: No, Your Honor.

MR. ZEIN: They would refuse, Your Honor. That's why they cannot -- this case cannot go forward in this, because you know statute of limitations and this and that, you know, it is being trying to be delayed and delayed and delayed, because you know some people try to use it politically, they couldn't. Now they cannot even settle it, because nobody's got the guts to settle it.

THE COURT: Okay. I think I know what I need to know for the time being with respect to what we do next. And so what I need, Mr. Zein, is for you to go ahead and do an affidavit. And, as far as I'm concerned, I would go ahead and address both questions that are in front of me, both the secrecy of the contract and the --

MR. ZEIN: Right.

THE COURT: -- the concerns you had for why it

wasn't brought. And then we'll have the government supplement a single brief, but supplementing really both motions --

MS. DONIS: Okay.

THE COURT: -- and then have the plaintiff respond, and then have a shorter government reply. And I don't know how difficult it was to get in touch with you, Mr. Zein. We have telephone contact with you, don't we?

MR. ZEIN: Yes, you have, Your Honor, at this time.

THE COURT: Okay.

MR. ZEIN: Your secretary has my private number.

THE COURT: Okay. All right.

MR. ZEIN: She can contact me any time.

THE COURT: All right.

MR. ZEIN: I'm using the New York number and address, Your Honor, not to divulge to the press, to the public where I can be reached, because I have been asked to go on TV, you know, on Larry King and Barbara Walters and the rest of it. And I haven't been -- I knew nothing, going on and you know --

THE COURT: Okay.

MR. ZEIN: And I have been trying to avoid the whole thing. I don't want to speak, because I don't want to -- anybody to ask me any questions about this. And I tell

you straightforward, Your Honor, and this -- I mean let no one, you know, think otherwise, if they see Zein versus the United States, it does not mean I'm an opponent of this country at all. It has nothing to do with that. And were this country, in its struggle now, I stand by it unconditionally without any reservation whatsoever.

THE COURT: All right. Ms. Donis, any closing thoughts?

MS. DONIS: No, Your Honor. We'll just respond to Mr. Zein's --

THE COURT: All right.

MS. DONIS: -- account.

THE COURT: Well, I think we have enough to move forward for the time being then. All right. I'll do a little procedural order explaining what happens next. And then I'll look for Mr. Zein's affidavit. And I think probably to be on the safe side why don't we go ahead and file these materials under seal.

MR. ZEIN: Right.

MS. DONIS: We've been doing that.

THE COURT: Okay.

MR. ZEIN: Okay. Your Honor, may I please if I can? If there is any question I have, can I call your office to inquire a little? I mean, you know procedural things, you know?

THE COURT: Procedural things, yes.

MR. ZEIN: Not issuewise, procedural.

THE COURT: Certainly.

MR. ZEIN: Because, you see, I have now to separate the two issues. I have to address the contract. And I have to address the secrecy of other matters which is not related to the contract. And I don't want them to overlap in order not to fall in the Totten trap as you have stated, Your Honor.

THE COURT: Well, there are two different questions. But you don't have to be too concerned about form. In terms of your initial affidavit, I mean, when you shift from one subject to the other, you can simply say that.

And then in the briefing later, in the separate briefing that'll come later from you, you can simply indicate when you're shifting gears from one issue to the other that there's no special formula or form for that. You don't need to be too worried about that.

MR. ZEIN: Okay, Your Honor.

THE COURT: All right. Thank you very much.

MS. DONIS: Can I ask a favor of the Court?

THE COURT: Certainly.

MS. DONIS: I don't know when Mr. Zein will be sending me his brief when he gets it done, but we haven't

gotten mail for a week. And I don't think we're going to be getting any mail any time soon. If -- if he sends it to the Court, the Court could send me a copy of what he files just to ensure that I get it.

THE COURT: That's fine. When you say brief, the first thing you'll be getting is an affidavit.

MS. DONIS: Yes, his affidavit. I don't know, whenever he does that.

THE COURT: Right.

MS. DONIS: If you could messenger a copy over to me, or we could pick it up, that would be fine.

MR. ZEIN: I will designate two copies with the Court copies to Ms. Donis.

THE COURT: All right.

MS. DONIS: That would be great.

THE COURT: All right. Thank you.

MS. DONIS: Okay.

THE COURT: All right. Bye-bye.

MR. ZEIN: Thank you, Your Honor.

THE COURT: Bye-bye.

(Whereupon, at 11:03 a.m., the hearing in the above-entitled matter was adjourned.)

//

//

//

REPORTER'S CERTIFICATE

DOCKET NO.: 99-244C

CASE TITLE: Zein v. U.S.

HEARING DATE: October 29, 2001

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: October 29, 2001

LaShonne Robinson

LaShonne Robinson
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N. W.
Washington, D. C. 20005-4018